NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BREYANA M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.V., *Appellees.*

No. 1 CA-JV 18-0005
FILED 7-3-2018

Appeal from the Superior Court in Maricopa County
No. JD530108
The Honorable Jennifer E. Green, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Kathryn E. Harris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Michael J. Brown joined.

---

**T H O M P S O N**, Judge:

¶1            Breyana M. (mother) appeals from the trial court's decision severing her parental rights to her son, J.V.[1]  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2            Mother, herself a dependent child, was sixteen years old when she gave birth to J.V. in December 2015.  In July 2016, mother ran away from the group home where she and J.V. were living and dropped seven-month old J.V. off with his father and paternal great-grandmother, promising to return the next day.  When mother failed to return for J.V., J.V.'s paternal relatives called the Department of Child Safety (DCS) because they were unable to care for him. DCS placed J.V. with his maternal great-grandmother and filed a dependency petition.  The juvenile court found that J.V. was a dependent child as to mother in November 2016.  DCS put services into place.  In August 2016, mother completed a hair follicle test that came back negative.

¶3            In mid-September 2016, DCS placed J.V. and mother in the same foster home.  They remained in the foster home until November 2016, when DCS placed mother and J.V. in a group home together.  In December 2016, mother ran away with J.V., despite having been warned that if she were to do so it would be considered kidnapping because J.V. was in the physical custody of his placement. DCS found mother and J.V. at a mall in early December 2016, placed J.V. back with his maternal great-grandmother, and placed mother back in the group home.

¶4            Later that month, mother again ran away from the group home.  She remained missing until late January 2016 when she contacted her DCS case manager and was placed in a shelter.  Shortly thereafter,

---

[1]  The juvenile court terminated J.V.'s father's parental rights in December 2017; he is not a party in this appeal.

mother ran away from the shelter and remained missing until late April 2017 when she contacted DCS seeking to re-engage in J.V.'s case plan. By then mother had turned eighteen.

¶5            During the time mother was missing, a psychological assessment that had been scheduled for her was closed out due to mother's lack of contact with DCS. A parent aide referral was also closed out due to lack of contact. Mother did not see J.V. from December 2016 to May 2017 because of her runaway status.

¶6            In May 2017, DCS caseworkers met with mother to discuss J.V.'s case plan. DCS asked mother to reengage in mental health services and take a psychological evaluation, asked her to resume visitation with J.V., and asked her to maintain stable housing and employment. Because mother admitted to using marijuana, DCS also asked her to start urinalysis testing. Mother tested positive for THC in May 2017 and twice tested positive for opiates in July 2017.[2] She missed eight tests from May 2017 to October 2017 and was closed out of testing at TERROS due to lack of contact. After she was closed out of substance abuse testing at TERROS, DCS asked mother to test at TASC but she failed to do so.

¶7            Mother attended group counseling sessions designed to address substance abuse and coping skills at TERROS beginning in May 2017. She missed three sessions in May and June 2017 and stopped attending sessions altogether in August 2017. In October 2017, TERROS closed mother out due to lack of contact.

¶8            Due to negative behaviors J.V. exhibited during visits with mother, DCS set up an intake appointment for therapeutic visitation for mother in June 2017. Mother missed her scheduled appointment and two more rescheduled appointment. Mother eventually completed an intake appointment. After completing two therapeutic visitation sessions with J.V., in late August 2017 mother informed DCS that she would be unable to attend therapeutic visitation for two weeks due to her new job. Therapeutic visits resumed in October 2017. Mother's last therapeutic visit with J.V. occurred in late November 2017.

¶9            In July 2017, DCS filed a severance motion alleging that J.V. had been in an out-of-home placement for nine months or longer pursuant

---

[2]  Mother had a prescription for opiates which she provided to TERROS and DCS.

to Arizona Revised Statutes (A.R.S.) § 8-533(B)(8)(a) (2018).[3]   Mother completed a psychological evaluation in August 2017.   The evaluator recommended that mother continue substance abuse treatment until successfully completing it and that she maintain independent, stable housing and employment for a minimum of twelve months before having J.V. returned to her.

**¶10**        After a contested severance hearing in December 2017, the juvenile court severed mother's parental rights to J.V.   Mother timely appealed.   We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2018), 12-120.21(A)(1) (2018), and 12-2101(A)(1) (2018).

## DISCUSSION

**¶11**        On appeal, mother argues that insufficient evidence supported the juvenile court's findings that she failed to engage in services and that severance was in J.V.'s bests interests, and that the juvenile court erred by *sua sponte* terminating her parental rights pursuant to A.R.S. § 8-533(B)(2).[4]

**¶12**        "We will not disturb the juvenile court's order severing parental rights unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them."   *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citations omitted).   We view the facts in the light most favorable to sustaining the juvenile court's ruling.   *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005).   We do not reweigh the evidence, because "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings."   *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citation omitted).   The juvenile court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B).   *Michael*

---

[3]   We cite to the current version of any statute unless the statute was amended after the pertinent events and such amendment would affect the result of this appeal.

[4]   The state concedes that the court erred by terminating mother's parental rights on the neglect ground because DCS never alleged or argued that ground for severance.   (OB at 5).   We need only find that reasonable evidence supports the nine months' time in care ground in order to affirm, however.

*J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  The court must also find by a preponderance of the evidence that severance is in the child's best interests.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

## A.  Nine Months' Out-of-Home Placement

**¶13**　　　　Under A.R.S. § 8-533(B)(8)(a), the juvenile court may terminate a parent-child relationship if DCS "made a diligent effort to provide appropriate reunification services," the child was in an out-of-home placement for nine months or longer, and the parent substantially neglected or willfully refused to remedy the circumstances that caused the child to remain out of the home.  DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers."  *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  DCS fulfills its statutory mandate to diligently provide appropriate reunification services when it "provide[s] [a parent] with the time and opportunity to participate in programs designed to help [the parent] become an effective parent."  *Id.*  "To 'substantially [neglect] or willfully [refuse] to remedy a circumstance,' a parent must be aware that [DCS] alleges that the circumstance exists and is one that, if it continues to exist at severance, may result in the termination of [the parent's] parental rights."  *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 332, ¶ 35 (App. 2007) (citation omitted).

**¶14**　　　　At the time DCS filed its severance motion in July 2017, J.V. had been in an out-of-home placement for approximately one year, and by the time of trial he had been in care for approximately seventeen months.  Throughout the dependency, DCS requested mother to find and maintain stable, independent housing and employment.  Although mother had a job at the time of trial, she had only been employed by her new employer for about a month and had held six different jobs, none for a long period, during the dependency.  Additionally, mother was not able to secure her own residence.  She had lived in three different places since turning eighteen, and was temporarily living with her mother at the time of trial.

**¶15**　　　　DCS also asked mother to demonstrate her sobriety by participating in substance abuse testing, and to attend counseling sessions at TERROS.  Mother tested positive for THC in May 2017 and missed eight tests before TERROS, the agency providing the testing, closed her out for non-compliance.  After she was closed out at TERROS, DCS asked mother to test at TASC but she did not do so.  Nor did mother follow through with group counseling at TERROS.

¶16        Based upon all of the evidence, the juvenile court concluded that J.V. had been cared for in an out-of-home placement for more than nine months and that mother substantially neglected or willfully refused to remedy the circumstances causing J.V. to remain in care.  The evidence was sufficient to support the severance order under A.R.S. § 8-533(8)(a).  While mother made some efforts to comply with the case plan, those efforts were "too little, too late."  *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

## B. Best Interests

¶17        Mother argues that reasonable evidence does not support the juvenile court's finding that severance was in J.V.'s best interests.  (OB at 19).  Severance is in a child's best interests if he or she would benefit from severance or be harmed by continuation of the parent-child relationship. *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990). Relevant factors include whether the child's existing placement is meeting the child's needs, whether the child is adoptable, and whether an adoptive placement is immediately available.  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010).

¶18        The evidence established that J.V. is adoptable, that his relative placement was willing to adopt him, and that he was in need of stability.  Mother testified that she could not parent J.V. on her own. Although the record is clear that mother has a bond with J.V., the existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013). Even in the face of such a bond, the juvenile court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the child.  *Id.* at 351–52, ¶¶ 30-31.  Here, the court did consider the totality of the circumstances and reasonable evidence in the record supports the court's best interests finding.

¶19        Because we affirm the court's order granting severance on the basis of nine months in an out-of-home placement, we need not address mother's argument concerning A.R.S. § 8-533(B)(2).  *See* footnote 4, *supra* paragraph 11.

## CONCLUSION

¶20      For the foregoing reasons, the juvenile court's severance order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA